FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA MCFADDEN, | : | CIVIL ACTION NO. 18cv544 |
| 1030 Mt. Vernon Rd. | : | |
| Bexley, OH 43209, | : | |
| | : | JUDGE |
| Plaintiff, | : | |
| v. | : | MAGISTRATE JUDGE |
| | : | |
| CITY OF COLUMBUS, | : | |
| 50 W. Gay St. | : | |
| Columbus, OH 43215, | : | |
| | : | |
| Defendant. | : | **JURY DEMAND ENDORSED HEREON** |

**COMPLAINT**

**I.      Preliminary Statement**

1.      This action seeks compensatory damages; declaratory, injunctive and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of Reconstruction Civil Rights Act 42 U.S.C.§1983; Title VII of the Civil Rights Act of 1964; and the Ohio Laws Against Discrimination committed by Defendant when it retaliated and discriminated against Plaintiff by (a) soliciting complaints from current and former subordinates and then immediately demoting her from a supervisory police position to a humiliating post in the property room where she was ineligible to receive overtime pay, and special duty assignments for engaging in protected activity by assisting a fellow officer in drafting, and filing a claim of race based discrimination (b) reporting retaliation for a race based claim when providing the Chief of Police an EEO investigation interview, (c) discriminating against Plaintiff

1

by treating her in a far harsher manner than non-minority supervisors who have had allegations made against them, (d) removing her from her position as a Patrol Lieutenant without due process, (d) subjecting her to harsher investigation tactics than non-minority officers and officers who did not make or assist in making complaints of racial discrimination, and (e) recommending her suspension, demotion, and termination based on the retaliatory and discriminatory investigation undertaken against her.

## II.        Jurisdiction and Venue

2.    Plaintiff brings race discrimination and retaliation claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; the Ohio Laws Against Discrimination, R.C. 4112.99; and under 42 U.S.C. §1981.

3.    This Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction). Plaintiff received a Right to Sue Letter from the Equal Employment Opportunity Commission on May 18, 2018 less than 90 days ago.

4.    Declaratory, equitable, and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201; 2202; and the common law of the State of Ohio.

5.    Compensatory damages may be awarded under 42 U.S.C.§1981, Title VII, and the common law of the State of Ohio.

6.    Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. § 1988; Title VII, 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 54; and the common law of the State of Ohio.

7.    Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the claims arose in Franklin County, Ohio, where Defendant locates it Division of Police headquarters and operates that Division through its Department of Public Safety.

## III.        Parties

8. Plaintiff Lieutenant Melissa McFadden ("Lt. McFadden") is a married female who has honorably severed in the Columbus Division of Police for more than 20 years since May 19, 1996, over the course of her employment has received two promotions moving from patrol officer to Lieutenant. Prior to the events that gave rise to this Complaint, Lt. McFadden had not been reassigned based on disciplinary reasons and was never the subject of serious workplace discipline.

9. Defendant City of Columbus is a political subdivision of the State of Ohio pursuant to Chapter 2744, Ohio Revised Code; employs, at its Department of Public Safety in its Division of Police, on a daily basis each week more than 20 employees and, at all times material to this Complaint, acted under color of State law in reassigning Lt. McFadden to the property room.

**IV.** **Facts**

10. Lt. McFadden was hired by Defendant as a Patrol Officer on May 19, 1996, from there she was promoted to Sergeant on March 21, 2010, and promoted again to Lieutenant on March 30, 2014, where she was assigned to Patrol Zone 2.

11. In each position that Lt. McFadden held, she served with distinction and was well liked by her peers and subordinates.

12. Lt. McFadden was not subject to any serious corrective action during her long tenure with Defendant, and oftentimes received scores of "above" expectations on her performance reviews.

13. In addition to her role as a police lieutenant, Lt. McFadden also served as a union representative for her fellow officers.

14. In that role, Lt. McFadden had the opportunity to meet and work with many officers outside her chain of command, and other events where officers socialized.

3

15. Lt. McFadden has a deep understanding of the Collective Bargaining Agreement ("CBA") between officers and Defendant, and knows what type of claims are subject to union representation and what type of claims are made outside the purview of the CBA.

16. Claims of disparate treatment based on race or gender basis are not covered by Defendant's CBA, and such claims are handled outside of the CBA process.

17. On October 18, 2016, Lt. McFadden spoke with an African-American female officer regarding issues she was having with her supervisor, Sergeant Kyle Fishburn. The officer was worried that Sgt. Fishburn was assigning tasks in an unfair manner.

18. The African-American female officer made a complaint to Sgt. Fishburn and Commander Robert Strausbaugh regarding her concerns about unfair treatment.

19. In turn, Sgt. Fishburn made two allegations of misconduct against the officer, one for insubordination, and one for making a complaint outside of the chain of command.

20. On October 26, 2016, the African-American female officer was subject to an interview by Sgt. Fishburn, Lt. McFadden represented the African-American female officer at this interview in her union capacity of representing an employee during an investigatory interview.

21. During this interview, Lt. McFadden made complaints of disparate treatment based on The African-American female officer's race, and racially discriminatory actions by Sgt. Fishburn, thus engaging in protected activity.

22. On November 11, 2016 the African-American female officer filed a second complaint alleging racial discrimination and disparate treatment.

23. Lt. McFadden assisted the African-American female officer in drafting the second complaint of racial discrimination.

24. When the African-American female officer went to file her second complaint, Lt. McFadden accompanied her to the City of Columbus Human Resources Department. Lt. McFadden was with the African-American female officer when she handed the complaint to Defendant's Human Resources Director Nicole Brandon.

25. It was clear from Lt. McFadden's actions that she was working with the African-American female officer in filing of the racial discrimination complaint, and that she was actively participating with the African-American female officer in making the complaint.

26. Lt. McFadden was doing this on her day off, and in her individual capacity, as she was concerned about racial discrimination in the Division, and because the CBA does not cover complaints of racial discrimination and disparate treatment.

27. On November 29, 2016, Commander Jennifer Knight, who at the time was leading Defendant's Internal Affairs Bureau, spoke with Sgt. Fishburn about the allegations made in the African-American female officer's EEO complaint.

28. Cmdr. Knight told Sgt. Fishburn in the presence of the African-American female officer and other officers that her complaint was "stupid" and "not going anywhere." Cmdr. Knight was annoyed by the complaint.

29. During the same conversation, Cmdr. Knight stated that she was going to "take [Lt. McFadden] out" for assisting the African-American female officer with the charge.

30. A few weeks later on December 15, 2016, the African-American female officer was interviewed by Sergeant Timothy Grimm who worked with Defendant's Internal Affairs Bureau regarding the EEO complaint, again Lt. McFadden, joined the African-American female officer to assist in making her complaint.

31. During this interview, the African-American female officer made a complaint about what Cmdr. Knight said on November 29th regarding her complaint.

32. On December 28, 2016, Lt. McFadden met with Sergeant Mark Fester to discuss retaliation at the hand of Cmdr. Knight.

33. During this meeting, Sgt. Fester and Lt. McFadden reviewed the recording that Lt. McFadden made of the December 15, 2016 interview of the African-American female officer.

34. After their review, Lt. McFadden provided a copy of the tape to Sgt. Fester so that he would play the recording for Defendant Police Chief Kimberly Jacobs in an effort to report Cmdr. Knight's retaliation.

35. The next day, Sgt. Fester met with Chief Jacobs and provided her Lt. McFadden's recording where the African-American female officer made the complaint.

36. After the meeting with Sgt. Fester, Chief Jacobs contacted two Sergeants, to discuss the comments she heard on the recording.

37. On January 17, 2017, Chief Jacobs reassigned several of Defendant's Commanders to new posts. As a result of the reassignments, Cmdr. Knight was removed from the Internal Affairs Bureau and reassigned to Patrol Zone 4, Commander Rhonda Grizzell was assigned to Patrol Zone 2, where Lt. McFadden worked. Cmdr. Grizzell is a close social friend of Cmdr. Knight's

38. Shortly before the reassignments took effect, fellow officer warned Lt. McFadden that Cmdr. Grizzell was going to "come after [Lt. McFadden]" and "run [Lt. McFadden] off of the zone." These comments were similar to those made by Cmdr. Knight two months before.

39. When Cmdr. Grizzell joined Patrol Zone 2, which encompasses the east and south side of Columbus, she took steps to sit in on roll calls with the various shifts and precincts.

40. When Defendant's officers communicate via e-mail and other platforms to set up meetings or relay information there is a set chain of command that the officers follow.

41. The chain of command follows roughly this pattern: patrol officers speak with sergeants, sergeants then speak with lieutenants, lieutenants speak with commanders, commanders speak with deputy chiefs, and the deputy chiefs speak with the chief.

42. In situations where links in the chain of command are skipped, the officers in the chain of command are either copied on the communication, or are otherwise notified of the communication.

43. When Cmdr. Grizzell sought to sit in on roll calls in Zone 2, she worked with Lieutenants to set up times in which to observe the roll calls.

44. When it came to observing the roll calls which Lt. McFadden oversees, Cmdr. Grizzell did not reach out to Lt. McFadden to schedule a time to visit a roll call, but rather directly reached out to Sergeant Andre Tate to schedule the visit on Lt. McFadden's day off, Lt. McFadden was not copied on or notified of the communications.

45. In the years prior to Cmdr. Grizzell being assigned to Patrol Zone 2, the zone had staffing shortages that are still present.

46. Patrol Zone 2 routinely had a higher volume of calls than other Zones, and the nature of the calls were generally more severe than other Patrol Zones.

47. Because of the busyness of the work in Patrol Zone 2, officers would transfer to different Patrol Zones when they had the chance.

48. Prior to Cmdr. Grizzell joining Patrol Zone 2, she was made aware that the Patrol Bureau was 50 officers short of optimal staffing. Cmdr. Grizzell was made aware that the staffing issue was due to Defendant not hiring officers who left the Division for retirements or resignations.

49. Prior to Cmdr. Grizzell joining Patrol Zone 2, Lt. McFadden did not receive any coaching or discipline regarding the morale of the officers she supervised on the Zone.

50. Prior to Cmdr. Grizzell joining Patrol Zone 2, Lt. McFadden did not receive any negative remarks on annual performance reviews based on the staffing levels and morale of Patrol Zone 2.

51. In January 2017, Chief Jacobs met with Commanders, including Cmdr. Grizzell, to discuss staffing issues that were prevalent in the Division, including patrol shortages.

52. Cmdr. Grizzell falsely attributed Patrol Zone 2's staffing issues to Lt. McFadden's leadership.

53. Cmdr. Grizzell spoke with current and former subordinates of Lt. McFadden's and solicited negative reviews about her leadership in an effort to undermine her, and get her off the zone as she and Cmdr. Knight had pledged before.

54. Cmdr. Grizzell was directed by Cmdr. Knight to speak with officers who had left Patrol Zone 2 in order to solicit complaint against Lt. McFadden.

55. As a result of her solicited complaints, Cmdr. Grizzell was able to make an EEO complaint against Lt. McFadden.

56. On March 2, 2017, under the guise of a coaching session Cmdr. Grizzell along with Defendant's EEO/HR Manager Miranda Vollmer, interviewed Lt. McFadden to discuss the allegations.

57. Unbeknownst to Lt. McFadden, the interview was recorded, and Lt. McFadden was not given the opportunity to be represented by a union member or other person. Lt. McFadden was not given notice that an EEO/HR representative would be present in the interview.

58. Defendant through its CBA, is required to advise employees that they have a right to a grievance representative and be made aware of the facts prior to any interview.

59. To Lt. McFadden's knowledge, HR has never been consulted or been brought in to a "coaching" session between a sworn supervisor and their sworn subordinate.

60. Cmdr. Grizzell told Lt. McFadden that Ms. Vollmer was present at the interview to "translate for [Cmdr. Grizzell]." Lt. McFadden was not provided an explanation as to why she was not allowed to be represented by the union at this interview.

61. A few days later, on March 5, 2017, an officer phoned Lt. McFadden and told her that Cmdr. Grizzell was reaching out to African American officers to "go up against you."

62. Because of the allegations levied against her by Cmdr. Grizzell, on March 12, 2017, Lt. McFadden was stripped of her supervisory role, and placed in the property room while Defendant investigated the claim.

63. This was an atypical assignment. Defendant's normal course of action when a supervisor such as a Sergeant or Lieutenant is accused of an EEO violation to not immediately reassign the supervisor. Rather, the subordinate making the complaint is taken outside of the supervisor's chain of command.

64. In November or December 2017, Defendant provided a training which instructed its employees to immediately remove or reassign a supervisor who was accused of an EEO violation.

65. To Lt. McFadden's knowledge she is still the only supervisor to be immediately removed from her position based on an EEO complaint since the training was implemented.

66. To the extent possible, both the accusing officer and accused supervisor's shift and assignment are not disrupted.

67. To Lt. McFadden's knowledge, prior to her being reassigned to property room, no other supervisors were ever assigned to the property room based on EEO allegations.

68. The property room work is humiliating in nature, and requires Lt. McFadden to perform demeaning and menial tasks such as removing vest covers from bullet proof vests, taping vest panels together, stacking the vests on pallets, as well as cutting patches off of old uniform shirts and cutting old uniform pants.

69. While working in the property room, Lt. McFadden was told that she would work under the direction of a civilian uniform clerk, and not a sworn law enforcement supervisor.

70. Lt. McFadden does not have any supervisory role or responsibility while in the property room, and is not eligible to work overtime hours.

71. Lt. McFadden is unaware of any white officers or officers who participated in EEO complaints being placed in the property room during an investigation.

72. Normally, Defendant does not transfer supervisors who have EEO complaints made against them. When Defendant does make a transfer of a supervisor it is to a similar position that they were holding at the time the complaint was made against them.

73. Lt. McFadden is unaware of any white supervisors, who are under investigation being, directed by non-sworn law enforcement officers and being forced to undertake humiliating menial work as she was.

74. During the time that Lt. McFadden was in the property room, several of Defendant supervisors and HR personnel discussed allowing Lt. McFadden to be assigned under her normal chain of command.

75. On July 28, 2017, Deputy Chief Ken Kuebler stated that Lt. McFadden would remain in the property room until she "is no longer either the subject or complainant in an EEO investigation."

76. Deputy Chief Kuebler's e-mail shows that a motivating factor of Lt. McFadden's remaining in the property room was her filing of a Charge with the Ohio Civil Rights Commission.

77. During Defendant's investigation in to Cmdr. Grizzell's trumped up allegations, Defendant has taken steps against Lt. McFadden that it has not taken against other officers.

78. In late November 2017, Defendant's Internal Affairs Bureau officers, searched Lt. McFadden's desk and personal effects.

79. Lt. McFadden was not notified that her desk and effects would be searched. Lt. McFadden was not allowed to be present during the search and she was not represented by anyone during the search.

80. Lt. McFadden is not aware of any other supervisor who's desk and personal effects were searched by Defendant during EEO investigations.

81. Defendant had no cause to believe that evidence related to the EEO charge filed against Lt. McFadden would be contained in her desk and personal effects.

82. Defendant knew that, it was highly unlikely that any evidence would have been found in Lt. McFadden's desk or personal effects.

83. As a result of the discriminatory and retaliatory EEO investigation Lt. McFadden was subjected to, Chief Jacobs recommended that Lt. McFadden be suspended, demoted, and terminated from Defendant.

84. As of the date of this filing, Lt. McFadden has not been reassigned to her normal supervisory post, or an equivalent post.

85. As a direct and proximate result of her reassignment, and the chief's recommendation of suspension, demotion, and termination, Lt. McFadden has suffered and continues to suffer from severe emotional distress and a significant reduction in the enjoyment of her life.

86. In reassigning, and recommending suspension, demotion, and termination for Lt. McFadden based on racial discrimination and retaliation, Defendant acted with conscious disregard toward her right to remain free from discrimination and retaliation, even though that conduct had a great probability of causing her economic and emotional hardship, and did cause such harm.

### First Cause of Action Violation of Ohio Laws Against Discrimination

87. Paragraphs 1 through 86 are incorporated herein as if fully set forth.

88. By reassigning, and recommending suspension, demotion, and termination for Plaintiff because of her race and engagement in protected activity, Defendant violated the Ohio Laws Against Discrimination, R.C. Ch. 4112.

### Second Cause of Action Discrimination in Violation of Title VII of the Civil Rights Act of 1964

89. Paragraphs 1 through 86 are incorporated herein as if fully set forth.

90. By reassigning, and recommending suspension, demotion, and termination for Plaintiff because of her race and engagement in protected activity, Defendant violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*.

### Third Cause of Action Discrimination in Violation of 42 U.S.C. § 1983

91. Paragraphs 1 through 86 are incorporated herein as if fully set forth.

92. By reassigning, and recommending suspension, demotion, and termination for Plaintiff without due process, and depriving her of equal protection under the law because of her race and engagement in protected activity, Defendant violated 42 U.S.C. § 1983.

### Fourth Cause of Action Discrimination in Violation of 42 U.S.C. § 1983

93. Paragraphs 1 through 86 are incorporated herein as if fully set forth.

94. By denying Plaintiff the enjoyment of her employment contract because of her race, Defendant violated 42 U.S.C. § 1983.

**VI.** **Prayer for Relief**

WHEREFORE, Plaintiff is entitled to and prays for the following relief:

A. a declaration that Defendant has violated the Ohio Laws Against Discrimination and/or Title VII of the Civil Rights Act, and/or 42 U.S.C. § 1983;

B. equitable relief of reinstatement with expungement of her personnel file and IAB file;

C. wages, salary, employment benefits, and other compensation denied or lost to her, because of City of Columbus' violation;

D. compensatory damages in an amount exceeding $25,000;

E. prejudgment and post-judgment interest:

F. costs and attorneys' fees; and

G. such other relief as the Court deems fair and equitable.

Respectfully submitted

|  |  |
|---|---|
| **OF COUNSEL:**<br>Louis A. Jacobs (002101)<br>(*LAJOhio@aol.com*)<br>177 19th St., Apt. 9C<br>Oakland, CA 94612<br>(614) 203-1255<br>Fax (510) 250-9007 | By: /s/ *John S. Marshall*<br>John S. Marshall (0015160)<br>(*jmarshall@marshallforman.com*)<br>Samuel M. Schlein (0092194)<br>(*sschlein@marshallforman.com*)<br>Edward R. Forman (0076651)<br>(*eforman@marshallforman.com*)<br>MARSHALL AND FORMAN LLC<br>250 Civic Center Dr., Suite 480<br>Columbus, Ohio 43215-5296<br>(614) 463-9790<br>Fax (614) 463-9780 |

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues and defenses triable to a jury.

By: /s/ *John S. Marshall*
John S. Marshall (0015160)

14