UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELISSA MCFADDEN,

    **Plaintiff,**

v.

CITY OF COLUMBUS,

    **Defendant.**

Case No. 2:18-cv-544
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

**OPINION AND ORDER**

This matter arises on Plaintiff Melissa McFadden's ("Lt. McFadden") Motion *in Limine* (ECF No. 60) and Defendant City of Columbus' (the "City") Motion *in Limine* (ECF No. 72). For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** both motions. (ECF Nos. 60, 72.)

**I.**

When the Columbus Division of Police ("CPD") promoted then-sergeant Melissa McFadden to the rank of lieutenant in 2014, she not only assumed additional supervisory duties, but also became one of the highest ranking African American officers in the force. Three years later, Lt. McFadden found herself reassigned to the CPD property room, disassembling bullet-proof vests. This case is about how and why that reassignment occurred. Lt. McFadden alleges it constituted an act of racial discrimination and/or unlawful retaliation. The City, by contrast, contends the move was meant to prevent Lt. McFadden from contacting other officers involved with a pending investigation into her own racially biased conduct.

Presently set to be tried are multiple claims by Lt. McFadden against the City arising under (1) Ohio's anti-discrimination laws, as set forth in Ohio Rev. Code § 4112; (2) Title VII of the

1

Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); and (3) 42 U.S.C. § 1983. Both parties now move *in limine* to exclude certain evidence at trial.

## II.

"Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016). The practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial." *In re E.I. du Pont De Nemours & Co.*, 348 F. Supp. 3d at 721 (citing *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). However, courts are generally reluctant to grant broad exclusions of evidence before trial because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

Evidentiary rulings are made subject to the district court's sound discretion. *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019); *see also Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002) ("In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."). They also entail a high level of scrutiny. Unless a party proves their opponent's evidence is clearly inadmissible on all potential grounds—a demanding requirement—"evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be

resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *see also Koch*, 2 F. Supp. 2d at 1388. The denial, in whole or in part, of a motion *in limine* does not admit all evidence contemplated by the motion; it simply means that the court cannot adjudicate the motion outside of the trial context. *Ind. Ins Co.*, 326 F. Supp. 2d at 846.

Here, much of the parties' motions turn on the issue of relevancy. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. A court may exclude relevant evidence under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### III.

**A. Factual Summary**[1]

By October 2016, Lt. McFadden—who, at that point, had twenty years of CPD experience—also served as a grievance representative for the Fraternal Order of Police. That month, she helped Officer Falacia Dragin defend herself against a claim of insubordination filed by Officer Dragin's superior, Sergeant Kyle Fishburn ("Sgt. Fishburn"). She also helped Officer Dragin, who is African American, file an Equal Employment Opportunity ("EEO") complaint against Sgt. Fishburn, a Caucasian, for creating a hostile work environment. The latter action ultimately led Internal Affairs Bureau Commander Jennifer Knight ("Cmdr. Knight") to meet with Sgt. Fishburn. There, Cmdr. Knight allegedly assured Sgt. Fishburn that he did not "have to worry

---

[1] For a more complete factual background, the reader is directed to this Court's summary judgment opinion and order. (*See* Op. & Order, ECF No. 48.)

3

about" Officer Dragin's EEO complaint, that she "would handle" it, and that "[i]t won't go anywhere."

Word of Cmdr. Knight's comments soon reached Chief of Police Kimberly Jacobs ("Chief Jacobs"), who subsequently reassigned Cmdr. Knight to another CPD division. Simultaneously, Chief Jacobs moved Commander Rhonda Grizzell ("Cmdr. Grizzell")—whom Lt. McFadden claims was "a close social friend of Cmdr. Knight"—to Lt. McFadden's unit, Patrol Zone 2. This rendered Cmdr. Grizzell directly superior to Lt. McFadden in Zone 2's chain of command.

Soon after this personnel shakeup, three current or former members of Zone 2 submitted written complaints to Cmdr. Grizzell regarding Lt. McFadden. All, in essence, alleged that Lt. McFadden had, in various instances, expressed a clear professional and personal bias toward African Americans and against Caucasians.[2] These allegations led Cmdr. Grizzell to internally report Lt. McFadden for violating several departmental EEO policies, which, in turn, prompted the CPD to launch an investigation into Lt. McFadden.

Pending that investigation's completion, the CPD, at the behest of Chief Jacobs, Deputy Police Chief Kenneth Kuebler ("Deputy Chief Kuebler"), and Cmdr. Grizzell, reassigned Lt. McFadden to the CPD property room, where she would assist Deputy Police Chief Gary Dunlap in removing "ballistic panels" from old body armor. Her assignment officially began on March 13, 2017. Shortly thereafter, Lt. McFadden tore her rotator cuff when she attempted to lift a stack of roughly ten-to-twenty armored vests. This resulted in her taking an extended medical leave.

---

[2] For example, one officer, Sergeant Andre Tate, has offered testimony that Lt. McFadden told him he would have scored lower on his performance review but for the fact she "did not believe in black-on-black crime." (Deposition of Andre Tate, ECF No. 35-12, PageID #2867.) Another, Officer Levon Morefield, testified that Lt. McFadden made various racist comments about his interracial marriage, and told him shortly before he transferred to another unit not to forget he was "nothing but a stupid [N-word]," and that his new unit would "treat [him] like the stupid [N-word] you are." (Deposition of Levon Morefield, ECF No. 35-19, at PageID #2534.)

4

By July 2017, several members of the CPD brass—including Deputy Chief Kuebler—discussed via email whether Lt. McFadden's leave requests should be re-routed to Cmdr. Grizzell. Therein, Deputy Chief Kuebler stated his position that "Lt. McFadden should remain on the Property Room roster for leave purposes unless and until she is no longer either the subject or complainant in an EEO investigation involving Commander Grizzell."

By May 2018, the investigation into Lt. McFadden concluded. At that point, Chief Jacobs conducted a disciplinary hearing. After determining that Lt. McFadden created a "hostile work environment," Chief Jacobs sustained all three of her alleged EEO infractions. She then referred Lt. McFadden's case to the City's Director of Public Safety, Ned Pettus, Jr. (the "Director"), with the recommendation that Lt. McFadden (1) receive a 240-hour suspension and demotion to police officer and (2) be terminated as a CPD employee.

The Director, after conducting a hearing of his own, disagreed with Chief Jacobs' assessment. In his view, the CPD failed to sustain any of Lt. McFadden's alleged EEO infractions with sufficient evidence. He thus declined to impose any sanction. Thereafter, the CPD fully reinstated Lt. McFadden to a position outside of the property room—one which, according to her, is consistent with her rank. She remains there to this day.

**B. Lt. McFadden's Theory of Liability**

By reassigning her to a "humiliating" position in the CPD property room, Lt. McFadden contends her CPD superiors—namely, Cmdr. Grizzell—both (1) racially discriminated and/or (2) retaliated against her for openly criticizing "institutional" racism within the CPD. On that basis, she now brings various claims against the City arising under the Equal Protection Clause and First Amendment of the Constitution (via § 1983), Title VII, and § 4112 of the Ohio Revised Code. To prove her case, Lt. McFadden highlights, *inter alia*, evidence which she contends shows her EEO

investigation "deviated" from the CPD's "standard operating procedure," and that "no other employee charged with discrimination or comparable misconduct has been assigned menial, unpleasant job duties or isolated the way she was." She also points to Deputy Chief Kuebler's July 2017 statement.

### C. The City's Motion *in Limine*

At the outset of this litigation, Lt. McFadden brought a procedural due process claim against the City. Only that claim failed to survive summary judgment. (Op. & Order, ECF No. 48.) Accordingly, the City now moves *in limine* to preclude Lt. McFadden from producing (1) any "evidence, testimony, or statements . . . related to her dismissed procedural due process claim." (Def.'s Mot. in Limine, ECF No. 72.) It also moves to preclude Lt. McFadden from producing all evidence or testimony related to (2) any "investigation, disciplinary charge and disposition of disciplinary charge" involving any CPD employee not listed in the parties' Stipulation of Facts; (3) Lt. McFadden's workplace injury; (4) "any other lawsuits, complaints, or charges against" the CPD that are unrelated to this case; and (5) "any witness or exhibit not properly disclosed in accordance with" this Court's November 2021 Trial Order.

#### 1. Lt. McFadden's Procedural Due Process Claim; Investigations and Disciplinary Charges Against Other CPD Employees

Because this Court dismissed Lt. McFadden's procedural due process claim, the City contends "the manner and results" of the CPD's EEO investigation into Lt. McFadden "are no longer an issue in this case." (Def.'s Mot., ECF No. 72 at PageID #5454.) It further notes that Lt. McFadden has agreed, pursuant to their Stipulation of Facts (ECF No. 71), "not to offer evidence, testimony, or statements regarding the manner and results of the City's investigations of alleged similarly situated employees." (Def.'s Mot., ECF No. 72 at PageID #5454.) Thus, at trial, the City argues Lt. McFadden should be prohibited from so much as referencing (1) "the City's actions

6

after [Lt. McFadden] was temporarily reassigned to the property room" and/or (2) "any investigation, disciplinary charge or disciplinary charge against any employee of the [CPD] outside of the stipulations." (*Id.* at PageID #5454-55.)

      The City's first request, while understandable, is overbroad. Certainly, some parts of the CPD's post-reassignment conduct—such as the ultimate disposition of her EEO charges—have little bearing on whether Lt. McFadden's reassignment was discriminatory or retaliatory in nature. But other components—say, for example, Deputy Chief Kuebler's July 2017 comment that "Lt. McFadden should remain on the Property Room roster for leave purposes unless and until she is no longer either the subject or complainant in an EEO investigation involving Commander Grizzell"—are of arguably greater weight.[3] The City's request for a categorical bar on all evidence related to its post-reassignment activity fails to make any such distinction. Nor does it sufficiently explain why *any and all* evidence related to that activity is (or would be) inherently irrelevant, prejudicial, or likely to confuse a jury. Thus, at this juncture, the Court sees no persuasive reason to unequivocally prohibit Lt. McFadden from offering evidence related thereto.

      The City's second request is more agreeable, albeit with an important caveat. As alluded, the parties have stipulated to seven specific instances—all pre-dating Lt. McFadden's reassignment—where the CPD did not reassign various officers after they became the subject of an internal EEO investigation. (Stipulation of Facts, ECF No. 71.) Lt. McFadden fully admits that, to obtain these stipulations, she agreed not to offer additional evidence regarding "the manner and results of the City's investigations of alleged similarly situated employees." (Def.'s Mot., ECF No.

---

[3] On its face, Deputy Chief Kuebler's comment appears to reflect a desire to keep a degree of separation between Lt. McFadden's and Cmdr. Grizzell because of their active conflict. By the same token, however, it also arguably demonstrates that—to at least one relevant CPD official—Lt. McFadden's reassignment was contingent on her status as an EEO complainant. This tends to undermine the City's stated reason for reassigning her to the property room (*i.e.*, to distance her from the officers who reported her to Cmdr. Grizzell).

7

72 at PageID #5454-55); (Pl.'s Resp., ECF No. 78 at PageID #5473) (noting that Lt. McFadden "has not signaled in any way . . . that she would stray" from her agreement not to introduce additional evidence "about how arguably comparable [CPD] employees were disciplined"). Even so, she argues, the City's second request should be denied because it, too, is overbroad.

Lt. McFadden raises a fair point. The City's request is, as she notes, certainly expansive. Nevertheless, the Court sees little issue in preventing Lt. McFadden from introducing evidence that she has already agreed not to produce. Doing so would merely help solidify both parties' expectations as they prepare for trial and, ideally, facilitate an orderly, efficient process.

Thus, the Court will cabin Lt. McFadden's comparator evidence to the stipulations offered. Note, however, that "should the facts or circumstances at trial differ from that which has been presented" to this Court in the parties' pre-trial memoranda, the Court reserves the right to alter this ruling. *See, e.g.*, *United States v. Harvey*, --- F. Supp. 3d. ---, 2022 WL 364408, at *5 (S.D. Ohio Feb. 8, 2022).

Accordingly, the Court **DENIES** the City's first *in limine* request and **GRANTS** its second.

### 2. Lt. McFadden's Workplace Injury

The City contends that Lt. McFadden "currently has an open workers' compensation claim" related to the shoulder injury she sustained in the CPD property room. (Def.'s Mot., ECF No. 72 at PageID #5455.) It further observes that, under Ohio law, workers compensation claims are generally viewed as "the exclusive remedy for an employee injured as a result of negligence," and thus asserts that "Ohio law precludes [Lt. McFadden] from re-litigating her work injury claim in this case." (*Id.*) (citation omitted). Along that line of thought, the City argues Lt. McFadden should be prohibited from introducing any "evidence, testimony, mention, or argument at trial"

related to her workplace injury, as such would be "irrelevant, unfairly prejudicial, and confusing to the jury." (*Id.*)

As an initial matter, the Court notes Lt. McFadden's case arises under federal law—namely, Title VII and § 1983—not solely that of Ohio. And insofar as her Title VII claims are concerned, it is clear enough that, given the Supremacy Clause, Ohio law has no bearing on the scope of Lt. McFadden's available relief. *See Torres v. Precision Indus., Inc.*, 938 F.3d 752, 755 (6th Cir. 2019) (describing the "doctrine of preemption," which "instructs that courts 'must not give effect to state laws that conflict with federal laws'"). Accordingly, the City's argument, on its face, is unpersuasive.

Nevertheless, the question lingers: Is Lt. McFadden's physical injury—which arose after the events leading up to her reassignment—relevant to her Title VII claims? Lt. McFadden asserts it is, namely for purposes of obtaining compensatory relief. The Court, however, is not so sure.

First, some background. Title VII, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a(a)(1), allows plaintiffs to seek compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" caused by a defendant-employer's "intentional discrimination," subject to various caps based on the defendant-employer's size. § 1981a(a)(1), (b)(3); *see Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996) ("To be eligible for compensatory damages [under Title VII], Turic was required to prove that Holland Hospitality's unlawful actions caused her emotional distress."). Lt. McFadden explicitly seeks to recover those damages—not only for the "humiliation" caused by her involuntary transfer to a laborious job, but for the medical costs and pain-and-suffering arising from her post-reassignment shoulder injury. Her theory of recovery is relatively straightforward: By reassigning her to the property room, Lt. McFadden suggests the CPD

9

"caused" her to perform "arduous work" that ultimately led her to hurt her shoulder. (*See* Pl.'s Resp., ECF No.78 at PageID #5485.) And on the surface, this theory might track. But on a closer look, the theory most likely fails.

For starters, the fact Lt. McFadden was reassigned to a labor-intensive position does not automatically mean her shoulder injury was "caused" *by* her reassignment, even if it occurred during the course of her property-room work. As Lt. McFadden acknowledges, the manner in which she injured her shoulder—*i.e.*, her single attempt to lift somewhere between ten-to-twenty armored vests all at once—was not required by her job; it was purely motivated by her desire to get through her daily vest quota "as . . . quick as possible." (Deposition of Melissa McFadden, ECF No 33-1 at PageID #178.) And to this Court's knowledge, the only material facts Lt. McFadden has established thus far are (1) that the CPD officers responsible for her reassignment knew her new job would consist of disassembling armored vests; and (2) that those vests generally weighed five-to-seven pounds each. (*See* ECF No. 78 at PageID #5477.) On these facts, there is at best an attenuated argument that Lt. McFadden's shoulder injury was not a "direct result" or "reasonably probable consequence" of her reassignment to the property room[4]—and, thus, that she is ineligible to receive compensatory damages for it under Title VII.[5] Bluntly, the Court notes that

---

[4] The relevant, controlling caselaw of this circuit suggests that, to obtain compensatory damages under Title VII, a plaintiff must demonstrate a fairly direct causal connection between the harm he or she specifically suffered and the discriminatory act in question. *See Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 603 (6th Cir. 2018) (compensatory damages awarded to Title VII plaintiff for pain-and-suffering onset by her retaliatory transfer to another, distant police unit); *Turic*, 85 F.3d at 1215 (compensatory damages awarded to Title VII gender discrimination plaintiff for the emotional harm caused by the termination of her employment); *see also West v. Tyson Foods, Inc.*, 374 Fed. App'x. 624, 641–43 (6th Cir. 2010). Here, Lt. McFadden's independent choice to lift numerous heavy vests at a time, may, absent more, mean that the harm she suffered is too attenuated from the alleged discrimination or retaliation she faced.

[5] Lt. McFadden does not readily identify any in-circuit case where Title VII compensatory damages were awarded for on-the-job, physical harm. The closest she gets is a citation to *Knafel v. Pepsi-Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1480 (6th Cir. 1990), which affirmed a backpay award for an employee whose employer knowingly "exacerbated" her pre-existing back condition "by assigning burdensome work designed to injure her." *Id.* But backpay is not a form of compensatory relief under Title VII. *See* 42 U.S.C. § 1981a(b)(2). And unlike the *Knafel* plaintiff, Lt. McFadden does not claim her reassignment exacerbated a known, pre-existing injury, or that the CPD knew of any such condition when it reassigned her to the property room.

it may not grant summary judgment on this issue, as the matter is presented as a motion *in limine* only. The parties are alerted that the same issue will arise under Civil Rule 50 during trial.

Nevertheless, the Court, mindful of the additional context trial might provide, will not decide the issue now. And even if it did conclude that Lt. McFadden's shoulder injury had no bearing on the issue of compensatory damages, the event itself is relevant in other ways. For one, discussing Lt. McFadden's injury may be necessary to explain Deputy Chief Kuebler's July 2017 statement regarding her medical leave requests. Likewise, the injury offers at least some insight into the "adverse" conditions Lt. McFadden faced in the property room. These facts are certainly "of consequence" to Lt. McFadden's Title VII claims. Fed. R. Evid. 401. And they also form a central part of the "story" she intends to tell at trial. *See Old Chief v. United States*, 519 U.S. 172, 186-89 (1997).

Thus, the Court disagrees with the City's barebones assertion that any evidence related to Lt. McFadden's shoulder injury is necessarily inadmissible. Accordingly, the Court **DENIES** its third *in limine* request.

### 3. Other CPD Lawsuits; Witnesses or Exhibits Not Timely Disclosed

Lastly, the City argues Lt. McFadden should be prohibited from (1) "making any inquiry, comment, or argument pertaining to any other lawsuits, complaints, or charges against the [CPD] or its employees other than the claim at issue," and (2) "calling any witnesses or presenting any evidence except those properly disclosed and exchanged between the parties." (Def.'s Mot., ECF No. 78 at PageID #5457.) Across both requests, the City fails to specify a single lawsuit, undisclosed piece of evidence, or unnamed witness for exclusion. Nor does it argue that Lt. McFadden actually intends to introduce the same. Instead, it asks this Court to preemptively bar her from doing so, just in case.

The City's forth and fifth *in limine* requests—much like its first—are far too broad to warrant an *in limine* order. *Sperberg*, 519 F.2d at 712. Simply put, more context is needed. Accordingly, those requests are **DENIED**.

### D. Lt. McFadden's Motion *in Limine*

The thrust of Lt. McFadden's Motion *in Limine* is similar (although not identical) to the City's first *in limine* request. She asks, in sum, for this Court to prohibit the City "from introducing, directly or indirectly, through evidence, testimony mention or argument at trial, facts, opinions, or conclusions developed" in the CPD's EEO investigation into Lt. McFadden *after* her reassignment to the property room on March 13, 2017. (Pl.'s Motion, ECF No. 60 at PageID #5369.) By way of example, Lt. McFadden singles out for exclusion Chief Jacobs' "recommendation" that she be terminated, as well as "Safety Director's rejection of that recommendation." (*Id.*) She argues that any such "after-acquired evidence" is irrelevant and/or unduly prejudicial, and thus barred under Rules 402 and 403. Additionally, she contends that some of the opinions drawn by the CPD after her reassignment—for example, Chief Jacobs' (or others) apparent view that she was a "liar"— constitute improper character evidence under Federal Rule of Evidence 404, and likewise are limited for impeachment purposes by Federal Rule of Evidence 608.

The City, having moved to preclude evidence pertaining to its "actions after [Lt. McFadden] was reassigned to the property room," "generally does not oppose" her motion. (Def.'s Response, ECF No. 81.) At this juncture, Lt. McFadden's Motion *in Limine* is **GRANTED**, subject to the caveat that either side may revisit the issue outside of the presence of the jury in the event evidence is adduced that could change this analysis.

**IV**.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the City's Motion *in Limine* (ECF No. 72) and Lt. McFadden's Motion *in Limine* (ECF No. 60). Specifically, it holds as follows:

- To the extent agreed upon by the parties, Lt. McFadden shall not present any additional evidence related to "arguably comparable" CPD employees outside of the Stipulations of Facts (ECF No. 71).

- Any entirely new information discovered, or novel opinions formed, by the CPD *after* it reassigned Lt. McFadden to its property room are irrelevant to the issue of whether her reassignment was motivated, in whole or in part, by a racially discriminatory or retaliatory animus. Nor, at this juncture, does such information or opinions appear relevant to any other material issue. Thus, both categories of evidence are inadmissible under Rule 402. *See* Fed. R. Evid. 402.

- All other evidentiary concerns raised by the parties will be addressed on a case-by-case basis as they arise at trial. *Sperberg*, 519 F.2d at 712.

As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

This case shall remain open.

**IT IS SO ORDERED.**

**5/25/2022**                                                              **s/Edmund A. Sargus, Jr.**
**DATE**                                                                    **EDMUND A. SARGUS, JR.**
                                                                            **UNITED STATES DISTRICT JUDGE**