**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

MELISSA McFADDEN,                          :
                                           :          **Civil Action No. 2:18-cv-544**
                     Plaintiff,            :
                                           :
          v.                               :          JUDGE: SARGUS
                                           :          MAGISTRATE JUDGE: JOLSON
CITY OF COLUMBUS,                          :
                                           :
                     Defendant.            :

**PLAINTIFF MELISSA McFADDEN'S MOTION**
**FOR EQUITABLE RELIEF**

Plaintiff Lt. Melissa McFadden ("Lt. McFadden") respectfully moves, pursuant to

Fed.R.Civ.P. 65, for an injunction and other equitable relief requiring Defendant to take

appropriate remedial actions that will deter future illegal conduct and restraining it from taking

retaliatory adverse action against Lt. McFadden.

Lt. McFadden requests that this Court order Defendant to: (1) expunge all records of her

illegal temporary reassignment to the property room from March 13, 2017, until her return to

work in Zone 2 on December 19, 2018; (2) expunge from her personnel file all records related to

this lawsuit; (3) refrain from taking any adverse action against Lt. McFadden based on her filing

and prevailing in this lawsuit; (4) avoid using this lawsuit as a consideration in any future

employment decisions regarding Lt. McFadden or any Defendant employee who acted as a

witness on behalf of Lt. McFadden; (5) isolate, if unable to expunge due to public records laws

(O.R.C. § 149 *et seq*) all records related to the illegal reassignment and/or lawsuit from any

other files bearing her name and employment information and restrict access to those with a

specific need to know;(6) place a notice of the jury verdict and all equitable relief in a location

visible to its employees, stating that Lt. McFadden secured judgment against Defendant for

1

both illegal discrimination and retaliation for her temporary reassignment to the property room during the pendency of the IAB investigation; (7) prevent Deputy Chief Kenneth Kuebler and Deputy Chief Jennifer Knight from participating in any decisions regarding Lt. McFadden's employment status or assignments;  (8)  create a racially neutral policy regarding the temporary reassignment of Defendant employees during the pendency of an investigation prohibiting the use of punitive reassignments while their conduct is being investigated.

**MEMORANDUM IN SUPPORT OF PLAINTIFF MELISSA McFADDEN'S MOTION FOR EQUITABLE RELIEF**

**I.**　　**Overview**

Lt. McFadden seeks this relief based on her success in a jury trial (Doc #s 104 and 107) in proving that Defendant City of Columbus engaged in illegal discriminatory and retaliatory conduct, by temporarily reassigning her to the property room to disassemble bullet proof vests during the pendency of the IAB investigation of EEO allegations against her, in violation of both federal and state law.  The injunction she seeks provides specific relief tailored to what she proved at trial and her ongoing employment with Defendant.  She assumes that Defendant will realize it remains bound by the general prohibitions of discrimination and retaliation imposed by the Constitution, Title VII, and the Ohio Laws of Discrimination, even though it flouted those laws by discriminating and retaliating against her.

**II.**　　**Argument**

　　**A.**　　**Courts Are Empowered to Provide Appropriate Equitable Relief.**

Lt. McFadden is currently employed by Defendant, subject to future investigations and reassignments, and will continue to seek promotion as opportunities arise.  The record at trial is clear: Lt. McFadden is perceived by many Columbus Division of Police (CDP) employees as a troublemaker who cavalierly alleges racial discrimination and retaliation.  She urges the Court to

keep in mind that, even though she was widely known to be litigious, CDP still discriminated and retaliated against her. That level of resentment and insistence on putting her in her place necessitate appropriate equitable relief.

Her success at trial will exacerbate, rather than eliminate, the widespread perception. The $2 monetary award may be misunderstood as exoneration, and risks CDP personnel taking action against Lt. McFadden based on the mistaken belief that CDP did not harm her.

"[O]ne of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Franks v. Bowman Transp. Co., Inc.,* 424 U.S. 747, 763 (1976) (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418 (1975)). Title VII expressly provides for injunctive relief: "If the court finds that the [defendant] has intentionally engaged in ... an unlawful employment practice charged in the complaint, the court may enjoin the [defendant] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to. . . any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1).

In exercising this discretion, a Court "must strive to grant 'the most complete relief possible.'" *Lander v. Lujan,* 888 F.2d 153, 156 (D.C. Cir. 1989) (quoting *Franks,* 424 U.S. at 764). "[T]he [district] court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Louisiana v. United States,* 380 U.S. 145, 154 (1965). *Accord United States v. City of New York,* 717 F.3d 72, 95 (2nd Cir. 2013) ("Once liability for racial discrimination has been established, a district court has the duty to render a decree that will eliminate the discretionary effects of past discrimination and prevent like discrimination in the future.").

After all, "Congress armed the courts with broad equitable powers to effectuate this 'make whole' remedy." *Eshelman v. Agere Sys., Inc.,* 554 F.3d 426, 440 (3rd Cir.2009). "Discretion is vested ... to allow the most complete achievement of the objectives of Title VII that is attainable under the facts and circumstances of [each] specific case." *Franks*, 424 U.S. at 770–71.

Thus, this Court has "wide discretion to 'locate a just result' regarding the parameters of the relief granted in the circumstances of [this] case." *Eshelman,* 554 F.3d at 440 (quoting *Albemarle Paper Co.,* 422 U.S. at 424). "[T]he court must, as nearly as possible, ' "recreate the conditions and relationships that would have been had there been no"' unlawful discrimination." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 372 (1977) (quoting *Franks*, 424 U.S. at 769). That "wide discretion" is also granted to remedy constitutional violations and, when exercising supplemental jurisdiction, to remedy violations of Ohio law.

The equitable relief Lt. McFadden seeks is well tailored to the testimony the jury heard and what the jury must have found. "A district court has broad discretionary powers to craft an injunction to the specific violations found to ensure that the employer complies with the law." *EEOC v. Wilson Metal Casket Co.,* 24 F.3d 836, 842 (6th Cir.1994). "In fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable." *Ky. Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 390 (5th Cir.1977). The focus is on conduct "which has been found to have been pursued or is related to the proven unlawful conduct." *Wilson Metal Casket,* 24 F.3d at 842.

The City will no doubt argue as it did at trial that it can be trusted to operate without discrimination or retaliation. *Howe v. City of Akron*, 801 F.3d 718, 754 (6th Cir. 2015) (quoting

*EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544 (9th Cir. 1987)), explained that "[p]ermanent injunctions may be appropriate remedies even when the defendant has taken remedial action because '[a]n employer that takes curative actions only after it has been sued fails to provide sufficient assurances that it will not repeat the violation.'"

While mootness will be found when a defendant "can demonstrate that there is no reasonable expectation that the wrong will be repeated," *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) (internal quotations omitted), CPD bears a "heavy burden" and must demonstrate that "the challenged conduct cannot reasonably be expected" to occur again.  *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 857 (6th Cir. 2005) (internal citations and quotations omitted).  Defendant cannot carry that burden at bar.

**B. Expungement, Preventive Measures, and Modified Policies Constitute Appropriate Equitable Relief.**

The relief sought by Plaintiff stems from her Complaint filed on June 4, 2018 (Doc. # 2) where she sought "equitable relief of reinstatement with expungement of her personnel file and IAB file" as well as "such other relief as the Court deems fair and equitable" (*see* Doc # 2 PAGEID 25-26) The scope of the injunction sought is closely tied to the case that Lt. McFadden proved, as it seeks to effectively eliminate discrimination and retaliation in temporary reassignments pending IAB or other investigations.  Lt. McFadden believes that, without this Order, it is likely Defendant will continue to engage in illegal conduct in temporary reassignments pursuant to investigations.

Expungement is a classic exercise of equitable power.  A "plaintiff who is the subject of illegal evaluations is entitled, at a minimum, to have any discriminatory records purged from his personnel files."  *Smith v. Sec'y of Navy*, 659 F.2d 1113, 1114 (D.C. Cir. 1981).  *See also Chastain v. Kelley*, 510 F.2d 1232, 1235 (D.C. Cir. 1975) ("The federal courts are empowered to

order the expungement of Government records where necessary to vindicate rights secured by the Constitution or by statute."). For example, *Hayes v. Shalala*, 933 F. Supp. 21, 27 (D.D.C. 1996), "order[ed] that Mr. Hayes' personnel folder and other relevant Department records be corrected to reflect the jury's verdict and the equitable relief provided by the Court."

In *Vega v. Chicago Park Dist.,* 351 F. Supp. 3d 1078, 1087 (N.D. Ill. 2018), *aff'd,* 954 F.3d 996 (7th Cir. 2020), expungement of personnel records was ordered to remove the stain on the plaintiff's record: "Because expungement of disciplinary records tainted by discrimination is a fair and appropriate remedy in this case, the Court orders defendant to expunge all references to the discriminatory investigation into plaintiff's timesheet fraud and resulting discipline[.]"

Lt. McFadden anticipates not only standing for promotion but also persisting in seeking justice. Based on her past mistreatment, she also anticipates continued resentment and resistance. Expungement was ordered in <u>Doherty v. City of Maryville</u>, No. 3:07-CV-157, 2009 WL 2823670, at *4 (E.D. Tenn. Aug. 28, 2009), on such grounds: "The Court believes that as long as this reprimand remains on file, Doherty faces ongoing irreparable harm as it may impact his opportunities for a promotion or otherwise tarnish his reputation." In turn, the Court found that the employee "will face ongoing irreparable harm to his reputation as long as the written reprimand remains in his file [and thus] does not have an adequate remedy at law. Accordingly, the Court will direct that defendant expunge the written reprimand issued to Doherty on September 22, 2006, and the underlying allegations which led to the written reprimand from all City of Maryville, Maryville Fire Department, and personnel files." *Id.*

Communicating information to Defendant's employees is essential to protecting Lt. McFadden from the perception that she cavalierly alleges discrimination and/or retaliation. When a plaintiff "remains an employee of the City and wishes to continue to work for the City

for the foreseeable training," she naturally "has an interest in the dissemination of accurate information about the outcome of this litigation." *Hemphill v. City of Wilmington*, 813 F. Supp. 2d 592, 601 (D. Del. 2011) (footnote omitted).

As in *Hemphill*, 813 F.Supp. 2d at 601, "direct[ing] the City to publish the verdict in this case" will go far "[t]o ensure [Lt. McFadden] suffers no further harassment or retaliation for engaging in protected activity[.]" There, the City was ordered to "post a complete and accurate description of the outcome of this litigation, including the jury's finding that the City retaliated against Hemphill, its award of no compensatory damages, and a description of the equitable relief I have awarded." *Id. Accord Hare v. Potter*, 549 F. Supp. 2d 688, 698 (E.D. Pa. 2007) ("To accomplish complete relief, defendant shall publish notices of the verdict in the contested region").

Relief from a superior who engaged in discrimination or retaliation is a critical portion of make-whole relief. While laws and Defendant's policies against discrimination and retaliation demonstrate compliance on paper, what happens in practice differs dramatically. *Hemphill*, 813 F.Supp. 2d at 601, recognized this discrepancy: "Although the evidence at trial demonstrated the City has a harassment policy—on which it trains employees and managers, including those who played a central role in this case—the jury's finding that the City retaliated against Hemphill because she complained of a hostile work environment evidences that, at least in this instance, the City's policies and training programs apparently failed." The evidence at Lt McFadden's trial shows the same departure from the law and Defendant's equal employment opportunity policies.

This type of relief is commonplace for sexual harassment by supervisors that inflicted a hostile work environment about which management was aware. *Bundy v. Jackson*, 641 F.2d 934, 943–46 (D.C. Cir. 1981), remanded for such an injunction even though the plaintiff had not

complained of harassment for six years due to the potential for resumption of harassment "because [the plaintiff's] agency ha[d] taken no affirmative steps to prevent recurrence of the harassment, and because all the harassing employees still work[ed] for the agency." *Id.* at 946 n.13. Fortunately for Lt. McFadden most of the discriminating and retaliating employees are no longer at CDP; however, the key players remain and should be recused from making future employment decisions about her.

Indeed, an even broader injunction against discrimination or retaliation would be justified. *Vega,* 351 F. Supp. 3d at 1087, recognized that the plaintiff's reinstatement and "testimony describing feelings of resentment against plaintiff for bringing this lawsuit" were "sufficient to justify such an injunction." The equitable relief was "[t]he Court enjoins defendant from discriminating against plaintiff based on her national origin by disciplining or terminating her in a manner disproportionate to the manner in which employees of other national origins who have engaged in similar conduct are treated, or for conduct tolerated in employees of other national origins, or retaliating against her for bringing this lawsuit." *Id.*

The Sixth Circuit held in *Howe*, 801 F.3d at 755, that "[a]n injunction is not overly broad because it requires that a defendant comply with federal law." Citing and quoting *Goodyear Aerospace,* 813 F.2d at 1544-45, which "disagree[d]" with the district court's view "that an injunction against retaliation was superfluous because Title VII already prohibits that conduct," *Howe*, 801 F.3d at 755, explained that "[s]uch provisions are commonplace and reflect the belief that an employer's 'eleventh hour change of heart' following being sued for violating federal law is insufficient assurance that the employer will not violate federal law again. *Howe*, 801 F.3d at 755, affirmed a broad injunction and cited approvingly precedent that included "barring retaliation for complaining against discrimination." Lt. McFadden traces the discrimination and

retaliation found by the jury to CDP's informal and subjective reassignment policy or custom. At trial, Lt. McFadden adduced evidence that Defendant does not have a policy regarding temporary reassignments pending investigations into possible misconduct. Division Policy 8.04 (Attached as Exhibit 1 accessed through Defendant's website on June 17, 2022) is silent as to temporary reassignments pending investigations. Moreover, the Collective Bargaining Agreement between Defendant and the Fraternal Order of Police is silent regarding member rights for temporary reassignments pending investigations (Attached as Exhibit 2, accessed through Defendant's website on June 17, 2022)

In addition to Defendant's policy directive and the CBA being silent to temporary reassignments, depositions filed with the Court and trial testimony shows Defendant had no such policy, but rather leaves the reassignment to the whims of an officer's chain of command. Former Deputy Chief of Police Gary Dunlap testified during the trial that "internal affairs does not dictate reassignments; that's a chain of command decision for a particular officer" (*See* trial transcript day 1 129:2-5, 129:10-12)

Lt. Bela Bernhardt, commanding IAB at the time of his deposition, similarly testified that reassignments are made by the chain of command for the officer involved ("[T]he relief of duty occurs by the chain of command not by internal affairs." "As with any relief of duty it is the chain of command that makes the determination at the time of the relief where they are going because when an officer, lieutenant, sergeant, whoever is relieved of duty on that form our instructions are where there are to report and that is done by the chain of command" (Bernhardt Dep. at 78:14-79:17))

Amy Van Pelt, Defendant's Human Resources Manager at the time of her deposition testified that when a Defendant employee is temporarily reassigned during an IAB investigation

that the responsibility for that reassignment would be "the office of the Chief [of Police]" (Van Pelt Dep. at 51:18-24) Ms. Van Pelt continued that when making a temporary reassignment decision "the Chief's office would collaborate with IA and/or potentially HR, City Attorney, multiple entities to make that determination but the ultimate decision would come from the office of the Chief based on recommendations." (*Id*. at 52:5-19)

Defendant's informal and subjective reassignment custom left unbridled the discretion of superior officers, and the general prohibitions of discrimination and retaliation did not prevent them from discriminating and retaliating against Lt. McFadden. A policy to the following effect would remedy that approach: "Temporary reassignments during investigations will be made only when necessary, subject, however to such reassignments being consistent with past reassignments for similarly situated officers, commensurate with the rank and duties of the officer being investigated, and preventive, rather than punitive, in nature."

## III. Conclusion

Defendant now stands before the Court in a very different posture than before the jury verdict. Having been adjudicated liable for discrimination and retaliation in violation of the Constitution, Title VII, and Ohio law, Defendant is now subject to the presumption that potent equitable relief must be ordered.

Lt. McFadden has not asked for a "sin no more" injunction ordering Defendant to abide by the law in general, but she is seeking relief that will make her whole and protect her in the future while restraining Defendant from repeating the discrimination and retaliation. Her motion should, therefore, be granted.

10

Respectfully submitted,

By: */s/ Samuel M. Schlein*
Samuel M. Schlein (0092194)
*(sschlein@marshallforman.com)*
John S. Marshall (0015160)
*(jmarshall@marshallforman.com)*
Edward R. Forman (0076651)
*(eforman@marshallforman.com)*
Helen M. Robinson (0097070)
*(hrobinson@marshallforman.com)*
Madeline J. Rettig (0098816)
*(mrettig@marshallforman.com)*
MARSHALL FORMAN AND SCHLEIN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed with the Court on this 21 day of June, 2022 by hand delivery. Parties may access this filing through the court's filing system.

By: */s/ Samuel M. Schlein*
Samuel M. Schlein (0092194)