**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MELISSA McFADDEN, | : | |
| | : | **Civil Action No. 2:18-cv-544** |
| Plaintiff, | : | |
| | : | |
| v. | : | JUDGE SARGUS |
| | : | MAGISTRATE JUDGE JOLSON |
| CITY OF COLUMBUS, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF MELISSA McFADDEN'S PETITION FOR
AWARD OF ATTORNEYS' FEES AND EXPENSES**

Plaintiff Melissa McFadden hereby petitions the Court, pursuant to 42 U.S.C. §§ 1988(b); 2000e-5(k), for an award of attorneys' fees and expenses reasonably and necessarily expended in successfully prosecuting her First Amendment, Equal Protection Clause of the Fourteenth Amendment, and Title VII claims of discrimination and retaliation, both as reflected in the declarations and exhibits accompanying this Petition and a future submission for hours reasonably expended in seeking a fees award.

**MEMORANDUM IN SUPPORT OF PLAINTIFF MELISSA McFADDEN'S
PETITION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

**I.    Background**

By virtue of both a jury verdict on June 13, 2022, finding that the City of Columbus discriminated and retaliated against Lt. McFadden and awarding her nominal damages and the equitable relief that this Court will order after reviewing her motion for equitable relief and the City's opposition, she is a prevailing party entitled to attorneys' fees and costs. Addressed separately below is whether the jury's award of nominal damages, $1 for each claim, precludes

1

her from receiving a substantial fees award.

In preparing this petition, undersigned counsel carefully reviewed their time entries which are maintained in the TimeSlips program and database. They have used TimeSlips as a time-keeping program for the entirety of their representation of Lt. McFadden. As noted in the declarations of counsel, Exhibits 1, 2, and 3 to this Petition, counsel kept their time in the database contemporaneously, in six-minute (0.10 hour) increments, and avoided block billing. As the declarations of counsel attest, the time records in the TimeSlips database are true and accurate reflections of work done in furtherance of her case.

The TimeSlips program allows for creation of a printout generation of all tasks recorded in a particular matter. (Attached as Exhibit 3) On June 14, 2022, Lt. McFadden's counsel printed and began a review of all tasks that were entered into the database in this matter. The first entry was recorded on April 26, 2017, and the most recent entry was recorded in mid-June 2022 associated with this filing.

Counsel reviewed more than 1,300-time entries to ensure that Lt. McFadden is only seeking an award of fees and costs that are directly related to the matter that was tried to this Court. To that end, Lt. McFadden's counsel removed more than 250 entries from the time records prior to submitting this fee petition. The removed entries eliminated 144.7 hours of attorney time, representing nearly 20% of the time that Lt. McFadden's counsel expended representing her during the past five years.

The removed time entries represent several different categories of work. The first category removed was time expended for legal claims not directly related to the matter before the Court, such as three additional Ohio Civil Rights Commission/Equal Employment Opportunity Commission charges that were based on alleged illegal employment actions taken against Lt.

2

McFadden by the City after the instant case was filed but were not directly related to the reassignment to the property room. The three charges occurred after Lt. McFadden returned to duty in December 2018, While Lt. McFadden believes the time associated with these charge are related to the case before this Court, they are arguably not directly related, and so those entries were removed.

In addition to removing the entries related to EEOC/OCRC charges, counsel also removed several other entries for legal work that was not related to the core of the instant matter. For example, Lt. McFadden had a hearing with the Department of Public Safety and City Council based on then Chief Jacobs' recommendation for termination. As part of counsel's representation of Lt. McFadden, counsel provided advice and legal services prior to those hearings.  Pursuant to the firm's policies each attorney who provided advice on those hearings entered their time in the TimeSlips program as the services were rendered. Upon review of those records, counsel removed records related to the Department of Public Safety Hearing and City Council meeting.

Additionally, counsel provided advice and counsel to Lt. McFadden regarding a defamation case filed in the Court of Common Pleas for Franklin County against the City of Columbus for claims made in its Internal Affairs Bureau (IAB) investigation into Lt. McFadden, as well a dispute with the Fraternal Order of Police (FOP) where union members who were directly related to this case filed a union ethics charge against Lt. McFadden. In each of these instances counsel provided legal services to Lt. McFadden, and, while they were involving the some of the same individuals and are related to the case at bar, counsel determined that they were not directly connected to prosecution of the case at bar and therefore removed all such time entries.

The final category of entries that was removed from this petition are entries regarding media appearances where Lt. McFadden's counsel was either present and/or consulted with her.

The former Chief's recommendation to terminate Lt. McFadden garnered significant local media attention. As a result, she and her counsel were interviewed by several news sources. Moreover, when Lt. McFadden filed her Complaint (Doc # 2) in June 2018, additional media attention occurred. Again, Lt. McFadden was asked to speak by several print, television, and radio outlets. Each time counsel worked on a matter regarding the media attention counsel recorded their time in the TimeSlips program. Upon review, counsel removed all entries related to media appearances in this petition.

Counsel also reduced time entries for this petition in other areas. When there were two attorneys who were involved in the same event, for example if both Mr. Marshall and Mr. Schlein were involved in a trial preparation meeting with Lt. McFadden, and there was a discrepancy between the entries for Mr. Marshall and Mr. Schlein, the entries for this petition were adjusted to the lowest time billed. Following the example of the trial preparation meeting, if Mr. Marshall recorded 1.1 hours for the meeting, and Mr. Schlein recorded 1.2 hours for the same meeting, Mr. Schlein's record was reduced to 1.1 to match Mr. Marshall's lower entry. There were approximately two dozen such where there were discrepancies between entries and the time was reduced.

The hourly billing rate for the attorneys involved is: Mr. Marshall, $450.00; Mr. Schlein, $195.00; Mr. Jacobs, $400.00.  That rate is being paid by Lt. McFadden and represents a discount from their customary hourly rate of $500.00, $310.00, and $450.00, respectively.   Because Lt. McFadden has persisted in years of campaigning for equal employment opportunity and counsel have participated in or learned of cases involving discrimination and retaliation by the City against minority police officers, representing her at a discount rate was appropriate.  Only the discount rate, not their customary hourly rate, is sought in this Petition.

Charges for the Lou Reiter's expert testimony and opinion are also being sought. His testimony was essential to explain to the jury how police departments operate and why the temporary reassignment of Lt. McFadden to menial tasks in the Property Room indicated discrimination and retaliation. As attested in the Declaration of the Trial Attorney, Marshall Dec., ¶ 13, the expert's testimony was instrumental in persuading the jury that Lt. McFadden had been a victim of discrimination and retaliation and deemed both reasonable and necessary for effective representation of her. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (When experts "conferred a benefit to the prevailing party by helping produce a favorable result," expenses are recoverable.) (citation omitted).

Finally, the Petition seeks expenses that counsel and, to their knowledge, other law firms in Central Ohio and elsewhere charge separately to clients. Omitted are expenses that typically are included in the overhead of law firms and not charged separately.

## II.  Analysis

### A.  Lt. McFadden Attained Prevailing Party Status.

Fees-shifting provisions are triggered by the moving plaintiff being a prevailing party. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Supreme Court has described the formulation of "prevailing party" as "generous," including one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (internal quotation marks omitted) (quoting *Hensley*, 461 U.S. at 433).

"[T]o qualify as a prevailing party, a civil rights plaintiff must obtain . . . an enforceable judgment against the defendant from whom fees are sought." *Farrar,* 506 U.S. at 111. "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal

5

relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111-12.

Lt. McFadden became a prevailing party when the jury found that the City had discriminated and retaliated against her and awarded her $2.00. *See, e.g., Kidis v. Reid*, 976 F.3d 708, 720–21 (6th Cir. 2020) ("While Kidis's compensatory damages award amounted to just $1, Kidis was a prevailing party as a matter of law.") (quoting *Farrar*, 506 U.S. at 112, "[A] plaintiff who wins nominal damages is a prevailing party under § 1988.").

How much she was awarded differs from whether she secured actual relief. Lt. McFadden believes that the jury lost its way and is seeking a new trial on damages. For purposes of whether she prevailed, though, the verdict and award suffice to bestow that status on her.

Any equitable relief this Court grants based on her motion for equitable relief is icing on the prevailing-party cake. Her status has already been achieved, and equitable relief will reaffirm that status.

    **B.**    **The Extent of Success Is a Factor in Determining the Fees Amount.**

Calculation of attorneys' fees award begins with the lodestar: the attorneys' "reasonable hourly rate" multiplied by the "number of hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 433. There is a "strong presumption" that the lodestar represents a reasonable fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

The hourly rate is the "prevailing market rate . . . in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984), defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). The top hourly rate at the undersigned law firm has for several years been $500 and is derived from historical rates that have been court

approved in recent Fair Labor Standards Act cases. *See, e.g., Gunasekera v. Irwin*, 774 F.Supp.2d 882, 890 (S.D.Ohio 2011) (Court "conclude[d] that the hourly rates ["$350 per hour for Mr. Marshall and $400 per hour for Mr. Jacobs"] that the Plaintiff's attorneys are seeking are reasonable." In approving those rates, *Gunsekera* adopted an affidavit explaining "that Mr. Marshall's current rate of $400 per hour—more than the $350 per hour he charges the Plaintiff and is requesting in this petition—is 'well within the fair and reasonable market value' for his services, and that Mr. Jacobs's rate of $400 per hour is "under the fair and reasonable market rate" for his services." *Id.*

That Court recognized that a reasonable hourly rate was what counsel actually charged: "In addition, both of these rates reflect the market value of their services as evidenced by the fact that the Plaintiff has been compensating his attorneys throughout the litigation as a fee-paying client." *Id. Accord Verhoff v. Time Warner Cable, Inc.*, 2007 WL 1362360 (N.D. Ohio 2007) ("Defendant also complains vigorously about the hourly rates charged by plaintiff's attorneys, who include a well-known and well-regarded civil rights and employment lawyer [Mr. Marshall] with a state-wide reputation and practice who has practiced in that area for more than twenty years, and his associate of about five years' experience in the same field.") (FMLA and ADA). Lt. McFadden has been compensating counsel at the discounted hourly rate throughout this litigation as a fee-paying client.

Because "the determination of a reasonable rate is difficult given wide variations in lawyers' experience, skill and reputation," an attorney's "customary client billing rate is one reliable indicia of that attorney's prevailing market rate." *West v. AK Steel Corp. Ret. Acc. Pension Plan,* 657 F.Supp.2d 914, 932 (S.D.Ohio 2009) (citing *Hadix v. Johnson,* 65 F.3d 532, 536 (6th Cir. 1995) (customary billing rate provides "an efficient and fair short cut for determining the

7

market rate") (citation omitted)). *Accord Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Benefit Programs*, No. 2:13-CV-00357, 2016 WL 223717, at *2 (S.D. Ohio Jan. 19, 2016); *Schumacher v. AK Steel Corp. Ret. Account Pension Plan,* 995 F. Supp. 2d 835, 844 (S.D. Ohio 2014); *Lee v. Eller*, No. 2:13-CV-87, 2015 WL 1286038, at *6 (S.D. Ohio Mar. 20, 2015). Thus, "the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Wells v. New Cherokee Corp.,* 58 F.3d 233, 239 (6th Cir. 1995).

This Court observed Mr. Marshall and Mr. Schlein during the trial, and their performances justify the discounted hourly rate. As the billing records reflect, Mr. Jacobs was primarily responsible for drafting the pleadings, Lt. McFadden's motions and memoranda in support, memoranda in opposition to the City's motions and jury instructions, and proposed jury instructions. Mr. Jacobs practices long distance, though before his retirement from The Ohio State University Moritz College of Law and relocation to California, he had prosecuted an employment discrimination trial before this Court. *Socks-Brunot v. Hirschvogel Inc.*, 184 F.R.D. 113, 116 (S.D. Ohio 1999).

The hours expended are reflected in the documentation submitted by undersigned counsel. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Hours that were not "reasonably expended" must also be excluded. *Id.* As has been done in the documentation submitted to support this Petition, "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* at 434.

8

"[D]istrict courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply to do 'rough justice.'" *The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).  Based upon the Court's "overall sense of a suit," an estimate may do so justice. *Id.*

Whether to deviate from that lodestar depends largely on how successful the case was: "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar*, 506 U.S. at 109.  Fees-shifting provisions were not enacted to product windfalls for attorneys. *Id.* at 115-16.

A narrow view of success measures the economic recovery when the core objective of the lawsuit was to secure damages. *Farrar* recognizes, though, that a lawsuit may have other core objectives, specifically vindicating public interest. *See, e.g., Glowacki v. Howell Pub. Sch. Dist.*, 566 Fed.Appx. 451, 454 (6th Cir. 2014) (citing *Farrar*, 506 U.S. at 111).

"[W]hen a plaintiff wins more than mere nominal damages, a district court will often abuse its discretion by refusing to award attorney's fees." *HLV, LLC v. Van Buren Cty.*, 784 Fed. Appx. 451, 453-54 (6th Cir. 2019).  Equitable relief is more than nominal damages, and Lt. McFadden's pending motion for equitable relief will, therefore, inform the Court's assessment of her success. "A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." *Fox v. Vice*, 563 U.S. 826, 834 (2011).

The fact that the fees, as well as costs, eclipse the $2.00 award is not dispositive. "In the civil rights area, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages" *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)).

The reason there is no proportionality requirement for civil rights cases matters at bar: "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *City of Riverside*, 477 U.S. at 575. Thus, "the value of rights vindicated goes beyond the actual monetary award, and the amount of the actual award is not controlling." *McHenry v. Chadwick,* 896 F.2d 184, 189 (6th Cir.1990). *Accord Hescott v. City of Saginaw*, 757 F.3d 518, 525 (6th Cir. 2014) ("A rule that eliminates attorneys' fees in civil-rights cases due to the size of the damages awarded 'would seriously undermine Congress' purpose in enacting § 1988.'") (citation omitted).

At bar, Lt. McFadden convinced a jury that the Columbus Division of Police (CDP) discriminated and retaliated against her, the law enforcers violated the law. In future cases, that verdict will be admissible under Fed.R.Evid. 404(b) to show the CDP's motive, intent, or pattern. Officers who have not opposed practices or policies they sincerely believed in good faith were discriminatory will be encouraged by her jury verdict to come forward.

*Farrar* is readily distinguishable. The plaintiff sought $17 million in compensatory damages. He received nominal damages. There was no equitable relief. Neither his nor the public interest was vindicated. "This litigation accomplished little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way." 506 U.S. at 114 (citing *Hewitt v. Helms*, 482 U.S. 755, 762 (1987)). In combination with this Court's opinion and order denying summary judgment, there is nothing "unspecified" about the "way" the City discriminated and retaliated against Lt. McFadden.

*Farrar*, 506 U.S. at 114, cabined its opinion by citing and quoting approvingly from *Rivera*, 477 U.S. at 585 (Powell, J., concurring): "Where recovery of private damages is the purpose of . .

10

. civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar*, 506 U.S. at 114-15 (citing and quoting *Blanchard v. Bergeron,* 489 U.S. 87, 96 (1989)), added that "[s]uch a comparison promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'"

Lt. McFadden readily admitted on the witness stand that, apart from a reduced salary while on disability, and taking student loans to complete her law school program the economic or material aspects of her job were not affected by her temporary assignment to menial tasks in the Property Room. The economic damages she sought were never a significant issue. While her motion for a new trial on damages seeks an amount commensurate with her emotional stress, mental anguish, and humiliation, she did not submit medical evidence to convince the jury she had been permanently injured and never so much as hinted that, after she returned to work from disability leave, those injuries adversely affected her job performance.

The primary purpose of her litigation parallels the years she has spent opposing practices or policies she sincerely perceived in good faith to be discriminatory or retaliatory. She was not going to let the City get away with what she believes had been systemic racism.

*Farrar* did not even establish a blanket rule. Instead, the Supreme Court held, "*[i]n some circumstances*, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is *often* such a prevailing party." 506 U.S. at 115 (emphasis added) Lt. McFadden's "circumstances" radically differ. Lt. McFadden did not seek the $17,000,000 that Farrar did in his case nor anything close to that amount of money. Lt. McFadden informed the jury that the case was about principle. She is a readily distinguishable prevailing party from Farrar.

Damages were simply not Lt. McFadden's "primary goal." *Cramblit v. Fikse*, 33 F.3d 633, 634 (6th Cir. 1994). *See Pouillon v. Little,* 326 F.3d 713, 719 (6th Cir.2003) (Boggs, J., concurring) (denial of attorney's fees to a plaintiff who won only nominal damages was "explained by the fact that [the plaintiff] only sought money damages"); *McBurrows v. Michigan Dep't of Transp.*, 159 Fed.Appx. 638, 641 (6th Cir. 2005) ("McBurrows sought damages in excess of $500,000 but was awarded only a dollar in damages.").

For that matter, even nominal damages redress a constitutional or statutory violation. "[W]e have already held that a person who is awarded nominal damages receives 'relief on the merits of his claim' and 'may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages.'" *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (quoting *Farrar*, 506 U.S. at 111, to establish standing). "Because nominal damages are in fact damages paid to the plaintiff, they 'affec[t] the behavior of the defendant towards the plaintiff' and thus independently provide redress." *Id.*

### III. Conclusion

Fees-shifting provisions were enacted to encourage private attorneys-general in service of constitutional and/or statutory rights. In cases just like Lt. McFadden's where the economic injuries were slight and the damages for emotional distress, mental anguish, humiliation, and pain and suffering were up to the sound discretion of a jury and its following instructions given by the Court, contingency representation agreements were unlikely and few victims could afford to be hourly clients. To vindicate those rights, Congress enacted fees-shifting provisions.

Lt. McFadden has vindicated those rights, and the nominal damages award does not obscure that favorable result. Her claims were far less focused on monetary damages than on vindicating her rights, and the fees-shifting provisions for Title VII and 42 U.S.C. § 1983 should

be enforced by granting this Petition and awarding fees and expert costs in the amount of $188,768.50 and 12,989.63 respectively.

<div style="margin-left: 40%;">

Respectfully submitted,

By: */s/ Samuel M. Schlein*
Samuel M. Schlein (0092194)
*(sschlein@marshallforman.com)*
John S. Marshall (0015160)
*(jmarshall@marshallforman.com)*
Edward R. Forman (0076651)
*(eforman@marshallforman.com)*
Helen M. Robinson (0097070)
*(hrobinson@marshallforman.com)*
Madeline J. Rettig (0098816)
*(mrettig@marshallforman.com)*
MARSHALL FORMAN AND SCHLEIN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

</div>

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was filed with the Court on this 27 day of June, 2022, using the CM/ECF system, which will send notification of such filing to all counsel of record. Parties may access this filing through the court's filing system.

By: */s/ Samuel M. Schlein*
Samuel M. Schlein (0092194)

13