**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MELISSA McFADDEN, | : | |
| | : | **Civil Action No. 2:18-cv-544** |
| Plaintiff, | : | |
| | : | |
| v. | : | JUDGE: SARGUS |
| | : | MAGISTRATE JUDGE: JOLSON |
| CITY OF COLUMBUS, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF MELISSA McFADDEN'S REPLY TO DEFENDANT'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
EQUITABLE RELIEF**

**I.  Background**

After the jury's finding of discrimination and retaliation and its award of nominal damages, Plaintiff Lt. Melissa McFadden ("Lt. McFadden") filed a Motion for Equitable Relief to remedy Defendant City of Columbus ("Defendant" or "City')'s illegal discriminatory and retaliatory actions. (Doc # 108) The City replied in opposition. (Doc # 114)

Notably, the City does not challenge the general power of this Court to grant equitable relief or the presumption that constitutional and statutory violations should be remedied. Nor does the City disagree that make-whole relief and deterrence are the standards governing such relief. Instead, the City improperly imports from separate issues – motions on fees and costs and for a new trial – arguments against equitable relief.

**II.  Argument**

**A.  Defendant's *Ad Hominem* Argument Must Be Rejected.**

Defendant asserts in its brief the assumption that Lt. McFadden is only seeking this equitable relief, to which she is entitled to under the law, as a cynical ploy so that she may be

1

awarded attorneys' fees and costs. This is a fundamental mischaracterization of Lt. McFadden's request for equitable relief and injunction, a request that started with the Prayer for Relief in her Complaint years before the nominal damages award. (Doc # 2)

Defendant writes, "Plaintiff therefore seeks equitable relief in a *futile* attempt to prove that she achieved *any* success through litigation." (Doc #114 at PAGEID 6983) (emphasis added) It is curious that the City would categorize findings of liability against it for discrimination and retaliation as no success at the trial. This cavalier attitude demonstrates exactly why an injunction is so crucial. The City is opposing equitable relief as if the monetary verdict from the jury proves it did no wrong and shows that it is likely to engage in this behavior again.

The findings of discrimination and retaliation provide, however, an ample basis for the equitable relief and injunction Lt. McFadden has sought. The Court should grant Lt. McFadden's Motion to protect her and others from illegal behavior when it comes to temporary reassignments during the pendency of investigations and prevent those involved in Lt. McFadden's illegal reassignment from further meddling in her career.

The City's mischaracterization is also irrelevant. Entitlement to equitable relief does not turn on a prevailing party's ulterior motive. A make-whole remedy is the litmus, and the presence of a desire to be made whole is the motive that matters. Beyond that, deterrence is a critical aspect of equitable relief, and the City's argument is akin to arguing mootness due to "a defendant's voluntary cessation of a challenged practice." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 & n. 10 (1982). Denying equitable relief would leave the City "free to return to [it] old ways." *Id.*

The same heavy burden imposed in the mootness context should be applied at bar. Equitable relief should be denied only "if subsequent events made it absolutely clear that the

2

allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.,* 393 U.S. 199, 203 (1968)), and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979). Judicial skepticism is warranted when assurances are given during hard-fought litigation. *Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 342–43 (6th Cir. 2007) ("[T]hat burden is increased by the fact that the voluntary cessation only appears to have occurred in response to the present litigation, which shows a greater likelihood that it could be resumed.").

As developed below and contrary to the City's argument, equitable relief has not been rendered unnecessary or duplicative by police division regulations or the collective bargaining agreement. Unlike a broad "obey the law" injunction that the City posits as a "red herring," Lt. McFadden seeks equitable relief narrowly tailored to her situation and not governed by existing policies. *Speech First v. Schlissel*, 939 F.3d 756, 768-69 (6th Cir. 2019), distinguished the genuine actions of "enacting new legislation or repealing the challenged legislation" from "merely regulatory" change that "were ad hoc, discretionary, and easily reversible actions."

Building on its *ad hominem* attack, the City argues that, since Lt. McFadden sought monetary damages, equitable relief should not be granted. It emphasizes that she had an adequate remedy at law – damages – and equitable relief should not, therefore, be available. That argument is a *non sequitur*. The precedent and statutory language Lt. McFadden cited in support of her motion demonstrate that **both** damages **and** equitable relief are appropriate upon a jury finding of discrimination and retaliation.

The City's argument is actually perverse. Because the jury awarded only nominal damages, the City has but a slap on the wrist for its constitutional and statutory violations, making equitable relief especially important.

Yet Defendant attempts to show that Lt. McFadden is not entitled to equitable relief because the jury awarded her $2.00 in monetary damages or as Defendant puts it "0.0004% of the damages she sought at trial" (Doc # 114 PAGEID 6984) As evidence of what Lt. McFadden sought *at trial*, Defendant attached her pre-trial settlement conference demand letter, which was marked as a confidential communication under Rule of Evidence 408. Regardless of whether it was proper for Defendant to publicly file a confidential communication or invoke it to decrease its exposure to equitable relief, Defendant is using this demand letter to materially misstate what Lt. McFadden actually sought *at trial*. Lt. McFadden *never* asked the jury to award her $421,000 or anything remotely close to that amount.

During Lt. McFadden's testimony she presented evidence of economic loss that she suffered because she was injured while in the property room due to Defendant's illegal conduct. This evidence includes: $25,000 in law school loans, $18,507.59 in direct lost wages, and 263.556 hours of lost sick leave with an approximate value of $15,286.25. The combined value of economic loss presented was $58,793.84. Lt. McFadden also presented evidence of emotional distress damages at trial. However, she never asked for a specific dollar amount of emotional distress damages, and even told the jury in closing arguments that this case was about principle as much as it was about money damages.

The jury understood that Lt. McFadden was treated in an illegal manner and found that the City both discriminated and retaliated against her. Lt. McFadden believes that the nominal damages award shows that the jury bought into the City's argument that she was a bad person and

4

not entitled to money despite being subjected to unlawful practices. This mudslinging that the City successfully engaged in is the basis for Lt. McFadden's Motion for New Trial on Damages (Doc # 111).

      **B.    Granting Equitable Relief Would Not Constitute an Abuse of Discretion Because Safeguards Are Lacking to Ensure a Make-Whole Remedy and Deterrence.**

The City devotes considerable time in its Memorandum in Opposition to the public records aspect of Lt. McFadden's request for expungement. The City warns the Court that, if it grants this Motion, the City will be in violation of law and at risk for spoilation claims in other civil cases. Again, the City misrepresents the issues before the Court.

First, and foremost, Lt. McFadden specifically noted in her submission that Ohio's public records laws could prevent the Court from fully expunging the records in this case. Lt. McFadden asked the Court to order Defendant to "(5) isolate, *if unable to expunge due to public records laws* (O.R.C. § 149 *et seq*) all records related to the illegal reassignment and/or lawsuit from any other files bearing her name and employment information and restrict access to those with a specific need to know;" (Doc # 108 PAGEID 5777) (emphasis added).

Should the Court grant Lt. McFadden's fifth prong of the requested equitable relief then it would allay all of the City's concerns that it wrote about in its Memorandum in Opposition. By isolating the records related to the reassignment and keeping them on a need-to-know basis, which of course would include responses to properly filed lawful public records requests and litigation discovery obligations, it would allow the City to comply with all laws and discovery requests in other litigation. The City would *not* be exposed to any additional liability if the records were isolated from Lt. McFadden's files and all the horrible outcomes that the City warns about would not come to fruition. Rather, this would be a reasonable step to protect Lt. McFadden's reputation

and ability to work at Defendant while also allowing the City to comply with its lawful records obligations.

The City should welcome the opportunity to isolate the records for Lt. McFadden as it typically does this in other cases. In fact, Section 10.10(F)[1] of the Collective Bargaining Agreement (attached) deals with overturned or unfounded records. The section states "in any case in which a documented constructive counseling, reprimand, suspension, or dismissal is overturned by . . . a court of competent jurisdiction, the personnel record shall clearly indicate same." Moreover, section 10.10(I) details the agreement on Destruction of Records, stating that records may be required to be "sealed and stored in separate inactive files" where they can be maintained for "the duration of the member's employment" and still be available for public records request and other litigation. Lt. McFadden seeks that Defendant merely follow its own protocols and procedures, noting that her removal was deemed illegal by a Court of competent jurisdiction, and seal and store the records in a separate inactive file. Lt. McFadden then expects the records to be destroyed in accordance with Defendant's document retention policy.

Defendant also incorrectly argues that Lt. McFadden does not need injunctive relief because the decision makers in placing her in the property room, Chief Jacobs, and Deputy Chief Dunlap, have since retired from the City. This again misstates the evidence presented at trial.

Lt. McFadden produced both testimony and documentary evidence that Deputy Chief Kenneth Kuebler, who is still employed by Defendant and is a higher rank than Lt. McFadden, was intimately involved in Lt. McFadden's reassignment. Deputy Chief Kuebler testified that he was present at a twenty-minute meeting with Chief Jacobs and Commander Grizzell where "there

---

[1] The collective bargaining agreement that Lt. McFadden provided with her initial Motion was available online through the City of Columbus' website. However, it was not the agreement that covered Lt. McFadden and other sworn officers. The provisions of the correct agreement are attached to this response

was a discussion of the EEO issues that had been raised and then a discussion of where it was appropriate to assign Lieutenant McFadden." (Kuebler dep. at 12:1-10) Deputy Chief Kuebler continued at that meeting "someone . . . came up with the idea of assigning Lieutenant McFadden to the property room." (*Id*. at 13:3-6) There is ample evidence that Deputy Chief Kuebler was involved in the decision to reassign Lt. McFadden to the property room.

Lt. McFadden also adduced evidence at trial that Deputy Chief Jennifer Knight was involved in the retaliation against Lt. McFadden. Lt. McFadden provided evidence that she was involved in the IAB EEO complaint regarding Officer Dragin. Lt. McFadden presented evidence from Chief Jacobs that the Deputy Chief Knight's behavior in discussing the EEO allegations with Sergeant Kyle Fishburn was part of her decision to reassign Deputy Chief Knight away from her post commanding IAB. It is certainly reasonable to conclude that Deputy Chief Knight was part of the retaliation against Lt. McFadden that the jury found liability for, and that in order to protect Lt. McFadden's rights that she must be protected from interference by Deputy Chief Knight in the future.

Defendant contends that Lt. McFadden's requested injunctive relief seeking the Court to order the Division to "create a racially neutral policy regarding the temporary reassignment of Defendant employees during the pendency of an investigation prohibiting the use of punitive reassignments while their conduct is being investigated" is unnecessary because reassignments are already governed by policy and collective bargaining agreements. This is simply not true. Lt. McFadden attached the Division Policy 8.04 which controls assignments and reassignments to her Motion and the Collective Bargaining Agreement (see footnote 1 above). Attached to this filing is Directive 9.00 from the Division's Supervisor's Manual which deals with relieving officers of assignment. The directive instructs the supervisors under which circumstances an officer should

7

be reassigned for an investigation or other reasons, the procedures and forms to fill out when reassigning an officer, and who to notify. Importantly, the directive does not instruct supervisors on where those officers should be reassigned or what a reassigned officer should be tasked with doing during their reassignment. This policy offered no help to Lt. McFadden in her illegal reassignment and does not protect her or any other officer from future illegal discriminatory or retaliatory reassignments.

While both documents detail responsibilities for assignments, both are silent to temporary reassignments pending investigations. There are no policies or contractual provisions regarding these temporary moves of officers during investigations. This is in large part why Lt. McFadden was not protected by these policies and provisions when she was placed in the property room to disassemble vests. Had these protections been in place as the City contends that they are, Lt. McFadden would not have been treated in the discriminatory and retaliatory manner the jury found. The fact that, despite the "protections" the City now relies upon, Lt. McFadden was illegally reassigned during the pendency of an investigation demonstrates the dire need for injunctive relief to fix this blind spot in Defendant's policies and to have protection against discrimination and retaliation for officers who are temporarily reassigned during the pendency of an investigation.

Defendant also argues at length that a new police chief has been hired and that Lt. McFadden has not stated that the new regime has acted illegally. The new chief has not implemented any policies to address the blind spots outlined above or protect Lt. McFadden or other officers from retaliation or discrimination. The argument that a new chief has been hired cannot carry the day here, particularly given Lt. McFadden's opposition to what she reasonably perceived was systemic discrimination.

8

Defendant's arguments about the other equitable relief Lt. McFadden sought are variations on the same deficient theme: she had her chance to get monetary damages, so she should not be granted equitable relief. Those arguments do not join those she submitted. For example, posting the final results of her trial would certainly affect her reputation within the police force, but the City objects to that way of countering the impairment to her reputation by the discriminatory and retaliatory assignment to disassemble vests. This reputational impact would be greatly beneficial to Lt. McFadden, as the Division has used this lawsuit against her in denying prestigious Lieutenant positions that she applied for since filing suit[2].

Finally, Defendant argues that Lt. McFadden's forthcoming promotion shows that she does not need protection from this injunction and that the City is not engaging in illegal conduct towards her. This argument is totally inapplicable to the case at bar and the relief sought. Lt. McFadden's promotion is a highly controlled event that leaves little to no discretion for the City. Promotions from rank to rank in the Division of Police are governed by the Collective Bargaining Agreement. As Lt. McFadden testified during trial, the process for being promoted to Commander consists of taking a promotional test, which is available to all Lieutenants in the Division, and after the test is complete the candidates for promotion are ranked by score, which is calculated by performance on the exam and seniority points. The highest scoring Lieutenants are offered the promotions first, and the Division goes down the promotional list until all the open Commander spots are filled.

Based on Lt. McFadden's score on the Commander exam Defendant has ***no choice*** but to promote her to Commander. This is not a situation where Defendant is making any additional effort to promote Lt. McFadden other than what it is contractually required to do. Lt. McFadden's

---

[2] Lt. McFadden filed a retaliation complaint with the Ohio Civil Rights Commission regarding retaliation against her filing of this lawsuit in denying her the prestigious Grievance Lieutenant position.

promotion should not, therefore, be taken as evidence that the City is not still capable of engaging in illegal activity towards Lt. McFadden.

## III. Conclusion

Regardless of this Court's rulings on her fees and costs petition or motion for a new trial, Lt. McFadden stands before the Court as a victim of discrimination and retaliation in violation of both the Constitution and statutory prohibitions. Regardless of whether Lt. McFadden is a bad person or rubs people the wrong way or a demanding taskmaster, she was found to have suffered discrimination and retaliation. Equitable relief should, therefore, be a foregone conclusion.

Respectfully submitted,

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

By: */s/ Samuel M. Schlein*
Samuel M. Schlein (0092194)
*(sschlein@marshallforman.com)*
John S. Marshall (0015160)
*(jmarshall@marshallforman.com)*
Edward R. Forman (0076651)
*(eforman@marshallforman.com)*
Helen M. Robinson (0097070)
*(hrobinson@marshallforman.com)*
Madeline J. Rettig (0098816)
*(mrettig@marshallforman.com)*
MARSHALL FORMAN AND SCHLEIN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

10

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was filed with the Court on this 15 day of July, 2022, using the CM/ECF system, which will send notification of such filing to all counsel of record. Parties may access this filing through the court's filing system.

By: */s/ Samuel M. Schlein*
Samuel M. Schlein (0092194)